NATIONAL BUTANE GAS CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 16725. Promulgated October 13, 1948.

*Lewis R. Donelson, III, Esq.*, for the petitioner.
*Edwin L. Kahn, Esq.*, for the respondent.

OPINION.

KERN, *Judge*: The petition herein, which was filed on December 15, 1947, asks for a review of the action of respondent in denying petitioner's application for relief under section 722 of the Internal Revenue Code, claiming a refund of the amount of a deficiency in excess profits tax for 1941 assessed and paid in 1945. On February 13, 1948, the respondent moved that the petition be dismissed. Upon this motion a hearing was held and oral arguments heard; and briefs were subsequently filed by the parties.

The facts as alleged in the petition and shown in exhibits attached thereto may be summarized as follows:

Petitioner filed its excess profits tax return for the year 1941 on March 15, 1942. In December 1944 petitioner executed a waiver under section 276 (b) of the Internal Revenue Code, the effect of which was to extend the period of limitation from March 16, 1945, to June 30, 1946. On January 1, 1945, a report of the internal revenue agent proposed the determination of a deficiency in excess profits tax for the year 1941 in the sum of $4,652.66. On February 15, 1945, the respondent issued a formal notice of deficiency determining the deficiency as proposed by the internal revenue agent. On March 1, 1945, petitioner executed a waiver of the provisions of section 272 of the Internal Revenue Code under 272 (d) and a consent to the immediate assessment of the proposed deficiency. On May 7, 1945, respondent issued an assessment of deficiency in excess profits tax in the amount of $4,652.66, plus interest in the amount of $850.48, and this amount was paid by petitioner pursuant to this assessment on May 9, 1945. On April 28, 1947, petitioner filed, under section 722, an application for relief of excess profits tax with respect to its excess profits tax taxable year 1941, claiming a refund of excess profits tax paid on May 9, 1945. On September 16, 1947, petitioner was formally notified of the rejection by the respondent of this application for relief and claim for

refund. The reason stated for this rejection was that petitioner's claim was untimely filed because of the provisions of section 722 (d) and section 322 (b) (3) of the Internal Revenue Code.

Section 722 (d) was added to the Internal Revenue Code by the Second Revenue Act of 1940. It reads as follows:

(d) APPLICATION FOR RELIEF UNDER THIS SECTION.—The taxpayer shall compute its tax, file its return, and pay the tax shown on its return under this subchapter without the application of this section, except as provided in section 710 (a) (5). The benefits of this section shall not be allowed unless the taxpayer within the period of time prescribed by section 322 and subject to the limitation as to amount of credit or refund prescribed in such section makes application therefor in accordance with regulations prescribed by the Commissioner with the approval of the Secretary. If a constructive average base period net income has been determined under the provisions of this section for any taxable year, the Commissioner may, by regulations approved by the Secretary, prescribe the extent to which the limitations prescribed by this subsection may be waived for the purpose of determining the tax under this subchapter for a subsequent taxable year.

At the time of the enactment of section 722 (d), the only pertinent period of limitation contained in section 322 was set forth in section 322 (b) (1). It reads as follows:

(1) PERIOD OF LIMITATION.—Unless a claim for credit or refund is filed by the taxpayer within three years from the time the return was filed by the taxpayer or within two years from the time the tax was paid, no credit or refund shall be allowed or made after the expiration of whichever of such periods expires the later. If no return is filed by the taxpayer, then no credit or refund shall be allowed or made after two years from the time the tax was paid, unless before the expiration of such period a claim therefor is filed by the taxpayer.

Section 322 (b) (3) was added to the Internal Revenue Code by section 169 (c) of the Revenue Act of 1942, and was, at the time of enactment, applicable only to taxable years beginning after December 31, 1941. Section 322 (b) (3) reads as follows:

(3) EXCEPTIONS IN THE CASE OF WAIVERS.—If both the Commissioner and the taxpayer have, within the period prescribed in paragraph (1) for the filing of a claim for credit or refund, agreed in writing under the provisions of section 276 (b) to extend beyond the period prescribed in section 275 the time within which the Commissioner may make an assessment, the period within which a claim for credit or refund may be filed, or credit or refund allowed or made if no claim is filed, shall be the period within which the Commissioner may make an assessment pursuant to such agreement or any extension thereof, and six months thereafter, except that the provisions of paragraph (1) shall apply to any claim filed, or credit or refund allowed or made, before the execution of such agreement. The amount of the credit or refund shall not exceed the total of the portions of tax paid (A) during the two years immediately preceding the execution of such agreement, or, if such agreement was executed within three years from the time the return was filed, during the three years immediately preceding the execution of such agreement, (B) after the execution of the agreement and before the expiration of the period within which the Commissioner might make an assessment pursuant to such agreement or any extension thereof,

and (C) during six months after the expiration of such period, except that the provisions of paragraph (2) shall apply to any claim filed, or credit or refund allowed, before the execution of the agreement. If any portion of the tax is paid after the expiration of the period within which the Commissioner might make an assessment pursuant to such agreement, and if no claim for credit or refund is filed after the time of such payment and before the end of six months after the expiration of such period, then credit or refund may be allowed or made if a claim therefor is filed by the taxpayer within six months from the time of such payment, or, if no claim is filed within such six-month period after the payment, if the credit or refund is allowed or made within such period, but the amount of the credit or refund shall not exceed the portion of the tax paid during the six months immediately preceding the filing of the claim, or, if no claim was filed (and the credit or refund is allowed after six months after the expiration of the period within which the Commissioner might make an assessment), during the six months immediately preceding the allowance of the credit or refund.

By section 509 (a) of the Revenue Act of 1943, set out in the margin,[1] the provisions of section 322 (b) (3) were made retroactive to years prior to January 1, 1942, "only if on or at some time after the date of the enactment of the Revenue Act of 1943 the Commissioner may assess the tax for such taxable year solely by reason of having made * * * an agreement with the taxpayer pursuant to section 276 (b) of the Internal Revenue Code * * * to extend beyond the time prescribed in section 275 * * * the date within which the Commissioner may assess the tax."

Since the taxable year here involved is 1941, the first question for our decision is whether section 322 (b) (3) is applicable by reason of section 509 (a) of the Revenue Act of 1943. Petitioner contends that it would be applicable only if the assessment of tax for 1941 could have been made by the respondent "solely by reason of having made * * * an agreement with the taxpayer pursuant to section 276 (b) * * *." If section 322 (b) (3) is not applicable, then the period of limitation would be "* * * two years from the time the tax was paid * * *" under section 322 (b) (1), i. e., two years from May 9, 1945, and the filing of the claim on April 28, 1947, would be within that period.

Could the assessment of tax for 1941, made by respondent on May 7, 1945, have been made by him even if no waiver had been executed

---

[1] (a) In General.—Section 169 (c) of the Revenue Act of 1942 (relating to the effective date of certain amendments to section 322) is amended by inserting at the end thereof the following: "A provision having the effect of the amendment inserting section 322 (b) (3) of the Internal Revenue Code, and a provision having the effect of the amendment made by subsection (b) of this section, shall be deemed to be included in the revenue laws respectively applicable to taxable years beginning after December 31, 1923, but such amendments shall be effective with respect to taxable years beginning prior to January 1, 1942, only if on or at some time after the date of the enactment of the Revenue Act of 1943 the Commissioner may assess the tax for such taxable year solely by reason of having made (either before, on, or after the date of the enactment of the Revenue Act of 1943) an agreement with the taxpayer pursuant to section 276 (b) of the Internal Revenue Code or the corresponding provision of the applicable revenue law to extend beyond the time prescribed in section 275 or the corresponding provision of such prior revenue law the date within which the Commissioner may assess the tax.

pursuant to section 276 (b) ?  It is our opinion that it could have been.

The petitioner's excess profits tax return for the year 1941 was filed on March 15, 1942.  Ordinarily, under section 275 of the Internal Revenue Code, the period of limitation upon assessment and collection would be three years thereafter, or until March 15, 1945.  However, on February 15, 1945, the respondent issued a notice of deficiency to petitioner with regard to its excess profits tax for 1941.  Under section 272 (a) (1) of the Internal Revenue Code, no assessment of the deficiency could have been made by respondent during 90 days thereafter.  Section 277 of the Internal Revenue Code provides that "the running of the statute of limitations provided in section 275 * * * on the making of assessments * * * shall (after the mailing of a notice under section 272 (a)) be suspended from the period during which the Commissioner is prohibited for making the assessment * * * and for sixty days thereafter."  Thus, in the instant case, the period of limitation which ordinarily would have run on March 15, 1945, was suspended by reason of the issuance of the notice of deficiency by respondent on February 15, 1945, and therefore, did not expire until after the payment by petitioner on May 9, 1945, of the tax assessed.  Since the tax here involved was assessed by the Commissioner on May 7, 1945, it can not be said that it might have been assessed solely by reason of any agreement pursuant to section 276 (b) of the Internal Revenue Code.

Respondent does not contend that his assessment on May 7, 1945, was made solely by reason of the waiver executed by the parties under section 276 (b).  His argument is to the effect that the actual assessment made by him on May 7 is immaterial.  He reasons that at least during the period July 15, 1945, to June 30, 1946, the Commissioner had the authority to make other assessments, and if such assessments had been made, they could have been made solely by reason of the waiver under section 276 (b).  Therefore, he concludes section 322 (b) (3) is made applicable by section 509 (a) of the Revenue Act of 1943, since he might have made assessments solely by reason of the waiver.

The Congressional purpose of adding section 3 to section 322 (b) of the code was unmistakably remedial.  In both the House and Senate reports on the Revenue Act of 1942 (see C. B. 1942–2, pp. 460 and 619), the following language is used:

Sub-Section (a) of this Section of the Bill adds paragraph 3 to Section 322 (b) to give the taxpayer the right to file a claim for credit or refund during the extended period and during six months thereafter, in case an overpayment is discovered after the time for obtaining credit or refund of such overpayment under the provisions of Section 322 (b) (1) and (2).

The situation sought to be remedied is described in Mertens, Law of Federal Income Taxation, 1947 Supplement, § 58.31, as follows:

For many years it had been a source of irritation to taxpayers that after a waiver was executed the Commissioner during the period the waiver was in effect could make an additional assessment after a re-examination, whereas the taxpayer was not allowed to make a corresponding claim for refund if the re-examination showed an overpayment.

This situation was corrected by the 1942 Act which amended the Code so that it now provides that the taxpayer may make a claim for refund during the period of the waiver and six months thereafter, regardless of the operation of the statute otherwise limiting filing of claims.

We are of the opinion that section 509 (a) is also remedial in nature since its purpose is to make retroactive the remedial provisions of section 322 (b) (3). As such it should be liberally construed to effectuate the objectives sought. The construction placed upon it by respondent as applied to the facts of the instant case, in our opinion, does not conform to this rule of statutory construction, but, to the contrary, would make a provision intended to liberalize the period of limitation in certain cases, work to the decided disadvantage of the taxpayer.

The only assessment made which involves the taxes actually paid and in dispute was made on May 7, 1945, and was not made solely by reason of the waiver executed pursuant to section 276 (b). The fact that general language was used in section 509 (a) of the Revenue Act of 1943 which might have made section 322 (b) (3) applicable to assessments made after May 9, 1945, or to claims for relief and refund made without reference to any assessment, does not, in our opinion, make it applicable to the payment of an assessment actually and concededly made not solely by reason of a waiver executed by the parties under section 276 (b). In view of the general purpose of the legislation, we think that respondent's reading of section 509 (a), *supra*, places too great an emphasis on the word "may" and not enough on the words "assess the tax for the taxable year solely by reason of having made * * * an agreement * * *." Cf. concurring opinion of Murdock, *J.*, in *Alice Wilson*, 23 B. T. A. 644, 648.

Both section 169 (c) of the Revenue Act of 1942 and section 322 (b) (3) repeatedly refer to the assessment of a tax. The latter section makes specific reference to sections 275 and 276. By section 275 the general rule is stated that the period of limitation upon assessment shall be "within three years after the return is filed." Section 322 (b) (1) provides that the period of limitation upon filing of claims for refunds shall be (1) three years from the time the return was filed, or (2) two years from the time the tax was paid. The first period of limitation prescribed by section 322 (b) (1) is the same as that prescribed by section 275 upon assessments (three years after

the return was filed). The period prescribed by section 275 upon assessments could be extended by waiver executed under section 276 (b). The purpose of sections 169 (c) of the Revenue Act of 1942 and 322 (b) (3) of the code was to make an equivalent extension of the period of limitation upon claims for refunds which otherwise would have been barred.

In the instant case there was an actual payment of the tax, for which refund is claimed, pursuant to an assessment which was valid without regard to waivers executed by the parties under section 276 (b). By virtue of section 322 (b) (1) the taxpayer could file a claim for refund within two years after the tax was paid. This is not, in our opinion, a situation which caused the enactment of section 322 (b) (3), or which Congress intended to cause a retroactive application of section 169 (c) of the Revenue Act of 1942.

We conclude that, upon the facts alleged in the petition, section 322 (b) (1) of the Internal Revenue Code, rather than section 322 (b) (3), is applicable to the instant case in determining the period prescribed for the filing of an application for relief under section 722 (d) of the Internal Revenue Code. Since it follows from this conclusion that petitioner's application was timely filed, it is unnecessary to consider or decide other contentions made by the parties.

Respondent's motion to dismiss is, accordingly, denied.

Reviewed by the Court.

VAN FOSSAN, *J.*, dissents.

---

DISNEY, *J.*, dissenting: I must dissent. Section 169 (c) of the Revenue Act of 1942, as amended by section 509 (a) of the Revenue Act of 1943, applied the new law as to time for filing claims under section 722 (by reference to section 322 (b) (3) and making its provisions effective instead of those of section 322 (b) (1)) to 1941, the year here involved. In short, the new law in section 322 (b) (3) provided that if there was a waiver under section 276 (b), the statutory period for filing claims should be the period of waiver plus six months—instead of two years from the date of payment (so far as here concerned). The petitioner here filed its claim for relief under section 722 within two years from date of payment and contends that such filing was timely; while the Government contends that the proper period under section 322 (b) was the period of waiver plus six months, which had expired. The majority view sustaining the petitioner's contention is at least greatly affected, if not controlled, by the idea that the statutes are remedial in nature and should be liberally construed, and that the respondent's view does not permit such liberal construction. But another taxpayer who had filed his claim, not within

two years from date of payment but within six months after the end of the period of waiver, might, with equal logic, contend that it would be illiberal interpretation to say that under the statutes he did not have the period of waiver plus six months for the filing of his claim. Certain it is that the majority opinion lays down the rule as to taxable years beginning prior to January 1, 1942, that the claim could be filed only within two years after the tax was paid (or within three years from the filing of return, not here involved). I see no reason, either in the statute or in the rules of interpretation, to deny retroactivity to the rule allowing the waiver period plus six months for filing the claims under section 722. On the contrary I think the statute and the quotation from Merten's on Federal Income Taxation, set forth in the majority opinion, indicates sound reason for such retroactivity. First, section 169 (c) of the 1942 Act, as amended, provides in language that there shall be retroactivity if "at some time after * * * the enactment of the Revenue Act of 1943 the Commissioner may assess * * * solely by reason of having made * * * an agreement with the taxpayer pursuant to section 276 (b) * * * to extend * * *" the date for assessment. Here clearly there was a period when the Commissioner could have assessed only by virtue of a waiver under section 276 (b). The majority opinion, indeed, does not seem to deny this, for it is based upon the fact that there was on May 7, 1945, an assessment followed by payment thereof on May 9, 1945, and for reasons not very clear to me, but apparently because of the idea that therefore the Commissioner could not again assess, concludes that petitioner's views should be sustained, although in December 1944 petitioner had executed a waiver under section 276 (b) extending the period of limitation to June 30, 1946. It seems to me completely plain that the assessment on May 7, 1945, did not prevent an additional assessment up to June 30, 1946, and that, therefore, there was a period May 15, 1945, to June 30, 1946, when the Commissioner could have assessed, but solely because of the waiver and hence the statute section 169 (c), as amended, is satisfied and retroactivity of the waiver plus a six-month period is called for.

Indeed, the majority opinion itself discloses, in the quotation from Merten's Federal Income Taxation, 1948 Supp. § 58.31, the objective of the amending statute and the reason for retroactivity thereof; for it points out that theretofore there had been irritation among taxpayers because the Commissioner, after execution of the waiver, could make additional assessments, after reexamination, but the taxpayer could not, if overpayment was thereby shown, claim refund, so that the 1942 Act provided a claim for refund by the taxpayer during the period of waiver and six months, regardless of other statutes of limitation. It seems to me that Congress did not intend such relief to be

limited only to 1942 and later years in the face of the amendment in 1943. A taxpayer, upon reexamination by the respondent during the agreed period of waiver, might find that he had originally paid entirely too much for the year 1941 or some previous year; but under the majority view, if he had so paid more than two years before he appealed for relief (unless claim was within three years from date of return), he would be without remedy, yet if examination showed grounds for assessment the Commissioner could so assess, though without the benefit of section 276 (b) and the waiver thereunder he would not have been able to do so. So it seems to me that a reasonable and liberal construction of these statutes is that, if at any time after the Act of 1943 the Commissioner finds himself able to assess only because he has obtained a waiver under section 276 (b), the taxpayer on his part may ask refund within the time set by section 322 (b) (3), and that the mere fact that there had been a previous assessment, not in reliance upon section 276 (b), is immaterial and outside the objectives of the statute.

Here there was a waiver under section 276 (b) prior to the assessment made. Assuming, as the majority opinion holds, that such assessment was by virtue of section 272 (d) and therefore not prohibited by section 272 (a) (1), nevertheless, there was, thereafter and up to June 30, 1946, "some time" during which the Commissioner might "assess the tax for such taxable year," i. e., 1941, solely because of the existence of the waiver under 276 (b). The statute is satisfied; liberal interpretation is satisfied when the privilege, in such case, of claiming refund is not limited to two years from date of payment but is, as provided for 1942 and later years, the period of waiver and six months. Reasonable interpretation requires mutuality between the Commissioner and the taxpayer on this matter. Moreover, examination of the Conference Committee Report on the Revenue Act of 1943* (Cumulative Bulletin 1944, p. 1082) with reference to the retroactivity of the amendments of section 169 (c) of the Revenue Act of 1943, after stating that the amendments will not apply to years beginning prior to January 1, 1942, unless the Commissioner would be precluded from making assessments but for the agreement, adds:

* * * The amendments will, however, be applicable to all taxable years beginning prior to January 1, 1942, if on the date of the enactment of the Revenue Act of 1943, or on some future date, the Commissioner *would* be barred from making an assessment with respect to such taxable year but for such an agreement. In such case the amendments will be applicable *regardless of whether or not the Commissioner actually does make an assessment* * * *. [Italics added.]

I can conceive of nothing more plainly indicative that the assessment actually made by the Commissioner on May 7, 1945, is in the

---

*The amendment appears to have been initiated in the conference report.

intent of Congress immaterial to the solution of this problem. The majority opinion makes no reference to the committee report, yet the language above quoted therefrom goes to the crux of the majority view, and contradicts it.

I would sustain the respondent's motion to dismiss because this taxpayer did not take action within the more liberal rule, both specifically and reasonably applied to taxable years both before and after January 1, 1942.

OPPER, J., agrees with this dissent.